MARK J. REICHEL, State Bar #155034
455 CAPITOL MALL, 8th FLOOR, Suite 802
Sacramento, California  95814
Telephone: (916) 498-9258
FAX:      (888) 567-2949

mark@reichellaw.com

Attorney for Defendant
SATISH KARTAN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br><br>SATISH KARTAN<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 16-CR-S-217 MCE<br><br>**DEFENDANT KARTAN SENTENCING MEMORANDUM URGING LEAST POSSIBLE SENTENCE OF INCARCERATION.**<br><br>Date: July 25, 2019<br>Time: 9:00 a.m.<br>Judge: Morrison C. England Jr. |

### SENTENCING MEMORANDUM[1]

**SENTENCING MEMORANDUM**

**FACTORS WARRANTING DEPARTURE AND ADDITIONAL FACTORS UNDER 3553 JUSTIFYING A REDUCED SENTENCE/VARIANCE**

**I.   LEGAL BACKGROUND**

As is widely known, virtually anything at all, post *Booker*, is a valid issue for the court to consider when imposing a sentence.  The Sentencing Reform Act, 18 U.S.C. §3551 et seq.,imposes an "overarching instruction" that district courts

---

[1] Defendant Kartan has Formal Objections wherein he argues that his Final Adjusted Offense Level is 22 at Category I for a range of 41-51 months.

Sentencing Memorandum

must select a sentence "sufficient but **not greater than necessary**" to achieve the sentencing goals in section 3553(a)(2). *Kimbrough v. United States*, 128 S. Ct.558, 570 (2007) (emphases added). Those goals include the need for the sentence to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (B) afford adequate deterrence to criminal conduct, © protect the public from further crimes of the defendant, and (D) provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Gall*, at 597, n. 6. To arrive at a sentence that serves those goals without being *greater than necessary*, the Act directs the judge to consider the many factors listed in §3553(a)(1) - (7). These considerations are more than a laundry list of discrete sentencing factors. They comprise "a tapestry of factors, through which runs an overarching principle," the court's duty "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008).

Section 3553(a)(1) begins with the "broad command" to consider the nature and circumstances of the offense and the history and characteristics of the defendant. The statute also requires judges to consider the types of sentences available by statute, section 3553(a)(3), including "sentences other than imprisonment," such as probation. *See Gall*, *id.*, and at 595-596 and n.4, 602 (probationary sentence reflected consideration of types of sentence available, and discussing probation as substantial restriction on freedom based on conditions of

supervision).

The Supreme Court envisions that a district court will always consider arguments that the Guideline sentence should not apply because the guideline itself fails properly to reflect Section 3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless. *Rita*, at 2468. Along with this, the Court places **nothing off-limits for district courts**. All the Guidelines are advisory and a judge may determine that any within Guidelines sentence is "greater than necessary" to serve the objectives of sentencing. *Kimbrough*, 128 S.C. at 564. District courts may not simply defer to policies of the Commission. *Rita*.

### II. A Below Guidelines sentence in this case serves the interests of justice and the 3553 factors.

This case is extremely unique. The defendant has no prior criminal record, has lost everything possible for an educated, good family man, father, married, employed person of his age. He was once living the American dream. His wife was a doctor, he had a beautiful and intelligent young daughter, he had a great job, the couple was saving money, he had a good education, and his health. In a few short years, all of that has been lost.

* *The effect on his children*. He has 2 very young children, who are incredibly close with him. The effect on their separation from him will be catastrophic to the children.

Sentencing Memorandum                              3

The disastrous and permanent long term effect on the young children cannot be over stated or disputed.[2]  That is why the case law supports departures in the face of higher guidelines under 3553 for that reason. It is based on science and common sense.[3]

Defendant Barai is correct in her Sentencing Memorandum that the guidelines pursuant to §5H1.6 App. Note 1(B) permits a downward variance for a defendant's family's loss of care taking. According to the Sentencing Commission, judges relied on §5H1.6 to grant downward variances in 3,682 cases. In the case of this couple, their 2 year old and 6 year old children will lose their mother and father for the duration of prison, and then their mother will be deported to a country where her husband and children are not citizens and

---

[2] Ross D. Parke & K. Alison Clarke-Stewart, *From Prison to Home: Effects of Parental Incarceration on Young Children* (Dec. 2001), presented at U.S. Dep't of Health and Human Services National Policy Conference, "From Prison to Home: The Effect of Incarceration and Reentry on Children, Families and Communities" (2002) (discussing impact of parental incarceration on children and benefits of alternatives to incarceration); U.S. Dep't of Justice, Office of Juvenile Justice and Delinquency Prevention, Risk Factors for Delinquency: An Overview (2001) (discussing link between aggression, drug abuse, and delinquency in children to several factors, including separation from parents); The Sentencing Project, *Incarceration and Crime: A Complex Relationship* 7 (2005) ("The persistent removal of persons from the community to prison and their eventual return has a destabilizing effect that has been demonstrated to fray family and community bonds, and contribute to an increase in recidivism and future criminality."); Patricia M. Wald, "*What About the Kids*?': Parenting Issues in Sentencing, 8 Fed. Sent. Rep. 137 (1995) (discussing growing body of research showing that children fare better in their parents' care than in foster care or elsewhere).

[3] U.S. v. Menyweather, 431 F.3d 692 (9th Cir. 2005) ( in$500,000 embezzlement case, no abuse of discretion to depart 8 levels to probation in part because of defendant's care for daughter, which was unusual compared to other single parents); U.S. v. Leon, 341 F.3d 928 (9th Cir. 2003) (departure granted for defendant who was sole care giver of suicidal wife who also suffered from renal failure); U.S. v. Aguirre, 214 F.3d 1122 (9th Cir. 2000) (district court had discretion to depart downward 4 levels for extraordinary family circumstance that defendant's 8-year old son had lost his father and would be losing his mother for substantial amount of time)

Sentencing Memorandum                    4

1  cannot live.
2      It is not disputed that this defendnat is an exceptional
3  father, extremely committed to his children and as loving a
4  parent as someone can be. He spends all of his time with them,
5  and showers them constantly with love.
6      This Court is referred to *United States v. Pauley*, 511 F.3d
7  468 (4th Cir. 2007) (upholding downward variance in part
8  because defendant "is a good parent" which is a "valid
9  consideration under § 3553(a)"); *United States v. Sayad*, 589 F.
10 3d 1110 (10th Cir. 2009) (where defendant convicted of
11 interstate delivery of 11 kilograms of cocaine and guidelines
12 57 months, sentence of probation is reasonable in part because,
13 unlike in most cases, here strong family support will aid
14 rehabilitation); *United States v. Milikowsky*, 65 F.3d 4, 8 (2d
15 Cir. 1995) ("Among the permissible justification for downward
16 departure . . . is the need, given appropriate circumstances,
17 to reduce the destructive effects that incarceration of a
18 defendant may have on innocent third parties."); *United States
19 v. Husein*, 478 F.3d 318 (6th Cir. 2007) (where defendant
20 convicted of participating in drug transactions, where
21 guidelines 40 months, sentence of one day in prison and 270
22 days home confinement warranted in part where district judge
23 properly determined that defendant's family would "benefit more
24 by [defendant's] presence than society is going to benefit from
25 [her] incarceration.").
26     * *He has no prior record and will never offend again*. In
27 light of what has transpired in this case, no one can assert
28 that this defendant would re offend. This loss has been so

Sentencing Memorandum                 5

great already, that re offense is not possible.

His prior law abiding life is a factor courts have relied upon in imposing probation or otherwise departing downward. *See United States v. Artery*, 555 F.3d 864 (9th Cir. 2009) (where defendant convicted of possession of pornography and where guidelines 41-51 months, court's spontaneous variance to probation not unreasonable in part because of his positive characteristics "such as his having no history of substance abuse, no interpersonal instability, no sociopathic or criminalistic attitude, his motivation and intelligence, and his support of his wife and child."); *see also United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (en banc) (where defendant convicted of tax evasion of $255,000, and guidelines 12-18 months, court's sentence to probation on condition of one year home detention and fine of $150,000 not unreasonable in part because of defendant's "minimal criminal record"); *United States v. Ward*, 814 F. Supp. 23 (E.D. Va. 1993) (departure warranted because guidelines fail to consider length of time defendant refrains from commission of first crime, here until age 49); *United States v. Polito*, 215 Fed. Appx. 354, 2007 WL 313463 (5th Cir. Jan. 31, 2007) (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's sentence of probation with one year house arrest reasonable in part because first offense); *United States v. Baker*, 502 F.3d 465 (6th Cir. 2007) (where defendant pled guilty and guideline range 27-33 months, below-guideline

sentence of probation with one year house arrest proper in part because he behaved "exceedingly well" while under supervision of pretrial services.).

He will not re offend again, after what he has learned in this matter. Again, this is a factor the Court can consider. he has learned his lesson, and he will never again do anything to compromise his family. He has already been publically humiliated and the repercussions to his personal and professional life are never ending. Http://www.whitehouse.gov/news/releases/2007/07/20070702-3.html (where Scooter Libby convicted of perjury and obstruction of justice and receives 30-month guideline sentence, President Bush commutes the prison sentence to 0 months because 30 months "excessive" and because the conviction itself is "harsh punishment" where "the reputation he gained through his years of public service and professional work in the legal community is forever damaged [,] his wife and young children have also suffered immensely, [where] he will remain on probation."; *see also United States v. Adelson*, 441 F. Supp. 2d 506 (SDNY 2006) (in securities fraud case, where guidelines call for life, court imposes 42 months in part because "there is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders.)

\**The guidelines are simply too high*. They just are. As the Supreme Court explained in *Gall*, a probationary term is not insignificant -

custodial sentences are qualitatively more severe

Sentencing Memorandum                          7

> than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.... Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.... Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer.

Gall, 552 U.S. at 48.

**CONCLUSION**

For the reasons set forth, Mr. Kartan should be sentenced to the least possible period of incarceration with a term of release on electronic monitoring for house arrest, an appropriate amount of hours of community service, along with whatever appropriate terms of probation the Court determines. He will not re-offend, and the community and his family will be better served with him working on the outside to make his community better.

Dated: July 18, 2019

                         Respectfully submitted,

                         *Mark J. Reichel*

                         MARK J. REICHEL